## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## JASPER DIVISION

| | | |
|---|---|---|
| **BARRY LYNN HOLT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **6:17-cv-00911-LSC** |
| | ) | |
| **NANCY BERRYHILL,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OF OPINION

## I.   Introduction

The magistrate judge to whom this Social Security appeal was previously assigned entered a Report & Recommendation recommending reversal of the Administrative Law Judge's ("ALJ's") finding that Plaintiff was not disabled within the meaning of the Social Security Act and remand for further determination because the ALJ improperly gave little weight to the opinion of Plaintiff's treating physician and failed to properly evaluate Plaintiff's credibility. (Doc. 14.) Neither party filed objections to the Report & Recommendation within the time allotted by the magistrate judge.

This case was then reassigned to the undersigned. After initial review, the undersigned stated that this Court was not inclined to adopt and accept the

magistrate judge's Report & Recommendation and requested the parties' respective positions on the matter through additional briefing. The plaintiff then filed a brief in support of the magistrate judge's Report & Recommendation (doc. 19), and the Commissioner of the Social Security Administration ("Commissioner") filed a brief in opposition (doc. 20). After now having thoroughly reviewed the entire administrative record, and having the benefit of the parties' original and supplemental briefs, this Court finds that the magistrate judge's Report & Recommendation is due to be adopted and accepted insofar as it recommends reversal and remand with regard to the ALJ's credibility determination but reversed insofar as it recommends reversal and remand with regard to the ALJ's treatment of Plaintiff's treating physician's opinion. For the following reasons, the decision of the Commissioner is due to reversed and remanded for proceedings consistent with this opinion.

## II.    Background

The plaintiff, Barry Lynn Holt, appeals from the decision of the Commissioner denying his applications for a period of disability and Disability Insurance Benefits ("DIB"). Mr. Holt timely pursued and exhausted his administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Mr. Holt was 49 years old at the time of the ALJ's decision, and he attended school through the tenth grade. (Tr. at 122, 157.) His past work experiences include employment as an asphalt raker and home builder. (Tr. at 52.) Mr. Holt claims that he became disabled on June 25, 2014, due to degenerative disc disease, osteoarthritis, carpal tunnel syndrome, anxiety, and depression. (Tr. at 294, 366-72, 377-85, 431-32.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB or SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *See id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *See id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of

impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The decision depends on the medical evidence contained in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of his past relevant

work.  *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the plaintiff's impairment or combination of impairments does not prevent him from performing his past relevant work, the evaluator will make a finding of not disabled.  *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work.  *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the plaintiff can perform other work, the evaluator will find him not disabled.  *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g).  If the plaintiff cannot perform other work, the evaluator will find him disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ first found that Mr. Holt was insured through the date of his decision. (Tr. at 13.) He further determined that Mr. Holt has not engaged in SGA since the alleged onset of his disability. (Tr. at 14.) According to the ALJ, Plaintiff's lumbar degenerative disc disease and osteoarthritis are considered "severe" based on the requirements set forth in the regulations. (*Id.*) However, he found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 16.) Further, he determined that Mr. Holt has the following RFC: he can perform the requirements of light work with the additional limitations

of no lifting and carrying over ten pounds; only occasionally balancing, stooping, kneeling, crouching, and crawling; no climbing ladders, ropes, and scaffolds; and no performing of work around unprotected heights or other work hazards. (Tr. at 17.)

According to the ALJ at step four, Mr. Holt is unable to perform any of his past relevant work, he was a "younger individual age 18-49" on the alleged onset date, he has a "limited education," and he is able to communicate in English, as those terms are defined by the regulations. (Tr. at 20.) The ALJ then enlisted a Vocational Expert to find at step five that there are a significant number of jobs in the national economy that Mr. Holt is capable of performing, such as dowel inspector, lens inserter, and surveillance systems monitor. (Tr. at 20-21.) The ALJ concluded his findings by stating that Plaintiff was not disabled from his alleged onset date through the date of his decision. (Tr. at 21.)

## III.   Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied.  *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v.*

*Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v.*

*Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## IV. Discussion

Mr. Holt argued that the Commissioner's decision should be reversed and remanded for three reasons: the ALJ erred in affording his treating physician's opinion little weight, the ALJ erred in his consideration that Plaintiff could not afford certain medical treatment, and the ALJ erred in discounting his credibility. This Court agrees with Plaintiff that this case must be reversed and remanded on the ground that the ALJ erred in evaluating his credibility, but the Court will address all three arguments.

### A. Weight to Treating Physician's Opinion

A treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford*, 363 F.3d at 1159 (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted). The weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends upon, among other things, the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent

the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). Furthermore, "good cause" exists for an ALJ to not give a treating physician's opinion substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips*, 357 F.3d at 1241 (*citing Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record).

The Court must also be aware of the fact that opinions such as whether a claimant is disabled, the claimant's RFC, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). The Court is interested in the doctors' evaluations of the plaintiff's "condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440. Such statements by a physician are relevant to the ALJ's findings, but they are not

determinative, as it is the ALJ who bears the responsibility for assessing a plaintiff's residual functional capacity. *See, e.g.,* 20 C.F.R. § 404.1546(c).

Plaintiff argues that the ALJ should have given more weight to the opinion of Dr. Mark Prevost, one of Plaintiff's treating physicians and an orthopedic surgeon at Southern Orthopedics and Sports Medicine Associates, P.C. (Tr. at 423.) A brief recitation of Plaintiff's relevant medical history is appropriate in analyzing his claim. Plaintiff was initially treated at Southern Orthopedics for carpel tunnel syndrome and injuries to both hands by another orthopedic surgeon at that office, Dr. Kendall Vague, in April 2014. (Tr. at 278, 322-24.) A couple of months later, on June 30, 2014, Plaintiff returned to Dr. Vague with complaints of low back pain. (Tr. at 322-34.) Dr. Vague ordered a computed tomography ("CT") scan and lumbar spine x-rays. (Tr. at 324). The x-rays exhibited no acute findings with only some mild degenerative changes. (Tr. at 283). The CT scan displayed a disc bulge/protrusion at the L5-S1 level centrally and toward the left, as well as a minimal bulge at L4-5. (Tr. at 284). Plaintiff then underwent several lumbar epidural steroid injections, on August 6, August 20, and September 3, 2014. (Tr. at 264, 262, 257). Plaintiff continued to complain of low back pain despite the injections. (Tr. at 264). Thus, Dr. Vague had Plaintiff see his partner, Dr. Prevost, whose specializes in orthopedic spine surgery. (Tr. at 314, 400, 423).

Plaintiff first saw Dr. Prevost on October 8, 2014, complaining of significant low back pain, with right hip and leg pain extending to the knee, and numbness up the right side of his back. (Tr. at 313-14). On examination, Plaintiff had 5/5 strength but exhibited decreased range of motion in his lumbar spine and decreased sensation on the right in an L5 distribution. (*Id.*) Dr. Prevost ordered an MRI (magnetic resonance imaging) and an EMG (electromyography). (*Id.*) The MRI displayed partial sacralization of L5 and multilevel degenerative changes, most notable at L4-L5. (Tr. at 290, 308). The EMG exhibited an abnormality in the right L5-S1 nerve root distribution. (Tr. at 345). Plaintiff returned to see Dr. Prevost on October 31, 2014, to discuss a surgical option. (Tr. at 307-08). In December 2014, Dr. Prevost performed a lumbar decompression fusion surgery on Plaintiff's back at L3-4, L4-5 and L5-S1. (Tr. at 308, 348-49.)

Dr. Prevost saw Plaintiff six weeks after surgery on January 21, 2015. (Tr. at 348-49.) Plaintiff continued to complain of significant pain despite some improvement. (Tr. at 348-49.) While a lumbar spine x-ray showed some degenerative changes at the L4-L5 level, it also showed an "excellent graft, hardware in place, and a solid fusion." (Tr. at 349, 351.) Dr. Prevost noted at that time: "At this point I recommended he continue to wear his back brace . . . [and] he

is in the process of applying for disability which I think is appropriate." (Tr. at 349.)

Dr. Prevost saw Plaintiff again about two months later, on March 18, 2015. (Tr. at 350-55.) Dr. Prevost noted that Plaintiff was still complaining of joint pain and swelling. (Tr. at 350.) He stated that while Plaintiff "may have chronic pain," he was "still only about thirteen weeks out from surgery." (*Id.*)

When Dr. Prevost last saw Plaintiff on July 22, 2015, he noted that Plaintiff continued to complain of fairly severe chronic back pain, right hip pain, and leg pain. (Tr. at 353-54). Lumbar spine x-rays conducted on that date showed that the fusion from the surgery appeared to be very solid; nevertheless, there existed diffuse degenerative changes and spondylosis, as well as loss of disc space height at multiple levels, retrolisthesis of L2 on 3 and L1 on 2, and an old compression fracture of T12. (Tr. at 354.) Dr. Prevost recommended an MRI scan, but he noted that Plaintiff was unable to afford it. (Tr. at 355.)

Plaintiff was also treated by Kevin Grooms, CRNP, after his surgery. (Tr. 359.) On June 2, 2015, CRNP Grooms noted that Plaintiff said he continued to experience persistent, burning back pain that he rated as seven out of ten. (*Id.*) X-rays portrayed some spine abnormalities, tenderness on palpitation, and muscle spasms. (Tr. at 360.) On February 15, 2016, CRNP Grooms stated: "[Mr. Holt

complains of] left shoulder pain since 'getting gallon of milk from back of car.'" (Tr. at 356.) The pain radiated from the left shoulder to the left side of his neck and was aggravated by left shoulder and back movement. (*Id.*) Mr. Grooms noted that Baclofen was ineffective in reducing pain and Flexeril was more effective. (*Id.*)

On March 23, 2016, eight months after having last seen Plaintiff, Dr. Prevost completed a Functional Capacities Assessment. (Tr. at 369.) Dr. Prevost diagnosed Plaintiff with lumbar stenosis, lumbar spondylosis, thoracic T-12 compression, and chronic lower back pain. (Tr. at 367.) He opined that Plaintiff would only be able to sit, stand, or walk continuously for up to one hour, that he would have to lie down for up to four hours during an eight-hour workday, and that he would never be able to carry items weighing over 25 pounds, would only occasionally be able to carry items weighing between 11 and 25 pounds, and that he would frequently be able to carry items weighing less than 10 pounds. (Tr. at 368.) Dr. Prevost opined that Plaintiff would miss three to four days of work per month. (Tr. at 369).

Dr. Prevost also gave sworn testimony on that same date, stating in part:

Unfortunately, despite the surgery, he continues to have what I foresee or what I assess as a fairly severe, both back pain and continued right hip and leg pain. It's unfortunate. This gentleman really needs a new MRI scan. He would also benefit from physical therapy, but unfortunately, has no insurance at this point. And he has already has some other changes since his surgery, including some retrolisthesis of L2-3 and L1-2. So, he's got other issues at some of these other levels. At this point, I do not believe he is capable working

at any type of meaningful job without this being addressed and maybe even permanently.

(Tr. at 392-93.)

The ALJ discussed in detail the aforementioned medical evidence but stated that he was giving little weight to Dr. Prevost's March 2016 opinion for several articulated reasons: (1) the opinion was made eight months after Dr. Prevost had last seen Plaintiff; (2) Dr. Prevost stated that he had seen Plaintiff approximately ten times but "Exhibit 6F shows only three visits;" (3) Dr. Prevost's statement that Plaintiff is permanently incapable of working is an opinion reserved to the Commissioner; (4) Dr. Prevost's opinions regarding Plaintiff's ability to sit, stand, and walk, as well as his need to lie down for four hours, do not address a full eight-hour work day; (5) his opinion that Plaintiff would need to miss 40-50 days of work per year is not supported by anything in his treatment records, which do not mention work absences; (6) the medical records do not show a restriction on Plaintiff's ability to stand, sit, walk, lift, and or carry, and Plaintiff's own testimony was that the only medical restriction he was under was on lifting more than eight pounds; and (7) while Dr. Prevost stated that Plaintiff's complaints were consistent with the EMG and MRI studies, they were done prior to Plaintiff's surgery, the x-rays after surgery revealed an excellent graft, hardware in place, and a solid fusion,

and although Dr. Prevost recommended another MRI in July 2015, Plaintiff reported he could not afford one so it was not done. (Tr. at 20).

These reasons constitute "good cause" for the ALJ to give little weight to Dr. Prevost's opinion under the regulations and case law, which provide that inconsistencies between a physician's own treatment notes and/or other medical evidence of record and the physician's opinion constitutes good cause and that a physician's statements concerning a patient's inability to work are not determinative because that is an issue reserved to the Commissioner alone. *See e.g.*, 20 C.F.R. § 404.1527(c)(2)-(4); *Crawford*, 363 F.3d at 1159-60.

Plaintiff argues that objective medical evidence supports Dr. Prevost's March 2016 opinion, but most of the evidence he relies upon is dated prior to his back surgery in December 2014. Indeed, Dr. Prevost submitted his Functional Capacities Assessment and sworn testimony in March 2016, and the most contemporaneous item of objective medical evidence, i.e., laboratory or clinical findings, are the post-surgery x-rays taken roughly eight months earlier, which noted excellent graft, hardware in place, a solid fusion, and healing at L4-5, despite the persistence of diffuse degenerative changes throughout the lumbar spine. (Tr. a 348-49.)

Plaintiff also argues that this case should be reversed because the ALJ incorrectly stated that Dr. Prevost only saw Plaintiff three times, when the record actually indicates more instances of Plaintiff either being examined by Dr. Prevost or Dr. Vague, his partner at Southern Orthopedics, or being subjected to testing such as CT scans, MRI's, or x-rays, between April 2014 and July 2015. However, the ALJ had many other reasons to not give Dr. Prevost's opinion great weight, as discussed above, aside from the few examinations, and there is no indication that the ALJ rested his decision on that one reason. (*See* tr. at 18-20).

Plaintiff also asserts that it was disingenuous for the ALJ to state as one reason for giving little weight to Dr. Prevost's March 2016 opinion that it was submitted eight months after he last saw Plaintiff but at the same time afford significant weight to the opinion of Dr. Robert Estock, the state agency non-examining medical consultant, which was dated December 2014. However, Dr. Estock assessed Plaintiff's alleged mental impairments, not his physical ailments, and Plaintiff has not identified any issues with the RFC regarding mental limitations. Therefore, Plaintiff's argument with regard to Dr. Estock is not persuasive. In sum, Plaintiff has not demonstrated reversible error in regards to the ALJ's treatment of Dr. Prevost's opinion.

### B.    Consideration of Plaintiff's Inability to Afford Treatment

Plaintiff also argues that the ALJ erred in considering his treatment history without considering his inability to afford continuous treatment. The ALJ did note that Plaintiff did not see Dr. Prevost after July 2015 and did not undergo Dr. Prevost's recommended MRI because he had lost his insurance and could no longer afford medical treatment (tr. at 51, 420), and the ALJ also discounted Dr. Prevost's March 2016 opinion in part because he had not seen Plaintiff since July 2015. However, the ALJ did not find that Plaintiff was not disabled due to noncompliance or failure to follow recommended treatment, nor did the ALJ unduly rely on Plaintiff's treatment in deciding his claim. Rather, the ALJ properly considered Plaintiff's treatment history together with the other evidence in assessing his RFC. *But see Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) ("[W]hen an ALJ relies on noncompliance as the sole ground for the denial of disability benefits, and the record contains evidence showing that the claimant is financially unable to comply with prescribed treatment, the ALJ is required to determine whether the claimant was able to afford the prescribed treatment."). For these reasons, this claim fails.

## C.    Credibility Determination

When a claimant attempts to prove disability based on his subjective complaints, he must provide evidence of an underlying medical condition and

either objective medical evidence confirming the severity of her alleged symptoms or evidence establishing that his medical condition could be reasonably expected to give rise to his alleged symptoms. *See* 20 C.F.R. § 416.929(a), (b); SSR 96-7p; *Wilson v. Barnhart*, 284 F.3d 1219, at 1225–26 (11th Cir. 2002). If the objective medical evidence does not confirm the severity of the claimant's alleged symptoms but the claimant establishes that he has an impairment that could reasonably be expected to produce his alleged symptoms, the ALJ must evaluate the intensity and persistence of the claimant's alleged symptoms and their effect on his ability to work. *See* 20 C.F.R. § 416.929(c), (d); SSR 96-7p; *Wilson*, 284 F.3d at 1225-26. This entails the ALJ determining a claimant's credibility with regard to the allegations of pain and other symptoms. *See id.* An ALJ making these determinations may consider the claimant's daily activities; symptom location, duration, frequency, and intensity; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of medication taken to alleviate the symptom; treatment and other measures used to relieve the symptom; and other factors concerning functional limitations and restrictions due to symptoms and must resolve inconsistencies and conflicts in the evidence. *See* 20 C.F.R. §§ 404.1529(c)(3), (4); SSR 96-7p, 1996 WL 374186, at *3; SSR 16-3p, 2016 WL 1119029 at *7.

Findings regarding a claimant's subjective complaints of pain and other symptoms are the province of the ALJ. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005). The ALJ must "[explicitly articulate] the reasons justifying a decision to discredit a claimant's subjective pain testimony." *Id.* at 1212 n.4. When the reasoning for discrediting is explicit and supported by substantial evidence, "the record will not be disturbed by a reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995). Indeed, in determining whether substantial evidence supports these findings, the question is not whether the ALJ could have reasonably credited the claimant's testimony, "but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

Mr. Holt testified he was unable to work due to constant pain, and he experienced difficulty arising in the morning after taking his medications. (Tr. at 44). He must wear a back brace to ease his pain. (*Id.*) His doctor restricted him from lifting more than eight pounds, and his average day consisted of taking his medications, lying down, and reading the paper. (Tr. at 43-44). He could sit fifteen to thirty minutes, stand about fifteen minutes, walk thirty minutes, and lies down three to four hours daily. (Tr. at 47-48). He no longer obtained treatment from Dr. Prevost because he lost his medical insurance and could not afford the services. (Tr. at 51).

The ALJ found that Mr. Holt's medically determinable impairments could reasonably be expected to cause some functional limitations, yet his allegations and statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence. (Tr. at 17-18). He specifically articulated that after Plaintiff's back surgery the evidence as a whole supported only one day per month missed due to medical visits. (Tr. at 19-20, 348-66). With particular regard to Plaintiff's back pain, the ALJ noted that although Plaintiff complained of lumbar pain, a postsurgical lumbar spine x-ray showed an excellent graft, hardware in place, and a solid fusion. (Tr. at 19, 349, 351).

The ALJ's decision to discredit Plaintiff's subjective complaints of pain is not supported by substantial evidence in the record. Plaintiff continuously complained of severe back, hip, and leg pain to all of his physicians both before and after his December 2014 surgery. Indeed, in January, March, and July 2015, he continued to report severe pain to Dr. Prevost, but he had to discontinue treatment at Southern Orthopedics due to inability to pay. (Tr. at 348-55.) As recently as February 2016, he complained to CRNP Grooms that he was still suffering from pain aggravated by left shoulder and back movement, and he was still taking various medications for pain. (Tr. at 356-60.) The record certainly indicates that Plaintiff did not respond ideally to his back surgery and continued to suffer some level of

pain. This is substantiated by objective medical evidence because post-surgery x-rays still showed some abnormalities, tenderness on palpitation, and muscle spasms. (Tr. at 356.) Therefore, the ALJ's conclusion that Plaintiff was not being truthful about his post-surgery pain simply because post-surgery x-rays revealed that the hardware was in place and the fusion was solid is not supported by substantial evidence in the record. Granted, the post-surgery objective evidence that would corroborate disabling pain is not overwhelming, and if Plaintiff's level of pain was so disabling as to prevent all activity, he could have presented to an emergency room or a clinic for treatment, regardless of his inability to pay. Nonetheless, the Court is of the opinion that this case should be remanded to the ALJ for a reevaluation of Plaintiff's credibility, which may include a consultative physical examination conducted for the purpose of determining whether Plaintiff's subjective complaints of back, hip, and leg pain are substantiated by clinical findings and whether they would ultimately prevent all work activity.

## IV.    Conclusion

Upon review of the administrative record, and considering all of Mr. Holt's arguments, the Court finds the magistrate judge's Report & Recommendation (doc. 14) is due to be adopted and accepted in part and reversed in part, and the decision of the Commissioner of Social Security denying Plaintiff's claim for a

period of disability and DIB is REVERSED and REMANDED for further administrative proceedings consistent with this opinion. A separate closing order will be entered.

**DONE** and **ORDERED** on September 28, 2018.

L. Scott Coogler
United States District Judge

160704